May it please the Court, my name is Keith Ravenberg, Counsel. I represent the plaintiff appellant in this case, LADS Network Solutions. The case, the core of this appeal revolves around Section 411B of the Copyright Act. And because of the changing, shifting interpretations of it over time. And so what I'd like to start with is to put this in perspective, some background on the law there. Traditionally there was a principle, common law copyright principle, referred to as fraud on the copyright office. If a copyright owner is found to have lied to the copyright office to get the copyright registration, that can cause it to be ineffectually invalid, not useful. And it was called fraud on the copyright office because the principle was that the applicant had to have done this with a purpose to deceive the copyright office. That was a common law principle. And then in 2008, 411B was enacted on this subject. There was some writings at the time the Copyright Office had a publication where they said this was in essence a codification of the fraud on the Copyright Office. Also it was stated that the purpose of this was to make life easier for copyright applicants. There's a longstanding principle in copyright law that copyright applications are supposed to be easy to do. And they're supposed to be done by lay people, not people who study copyright law necessarily. And so it presented, it attempted to codify a safe harbor for a copyright applicant who makes a mistake without any bad intent and not having the registration invalidated. But the statute doesn't say intent, right? I mean the statute says knowledge, if I'm remembering it right. So my question is, do you think the Unicolor's Supreme Court decision dictates the result in this case? And if so, why? Well, I think the Unicolor's Supreme Court case admittedly in dicta said what I think should be the result here. But what sealed it was later the Ninth Circuit on remand in that case. Of course that doesn't seal it for us, right? I mean that's persuasive authority. But your argument, as I understand it, is the door is open following Unicolor's, but the right result is what the Ninth Circuit did. Is that fair? Yes, I would agree with that. And the Eleventh Circuit. Is it the Ninth? What part of the dicta on Unicolor's is relevant? Is it the third or fourth? I think it's the fourth kind of level of analysis where Justice Breyer talks about the fraud on the copyright office. Right. Kind of background to the statute. Is that the part of Unicolor's that we should be looking at here to reach our result in this case? Yes, I think so. Because I think what the court said was there was no intent to change the fraud on the copyright office principle with 411B. But of course that was in the context of fact versus legal mistake, right? Correct. And your argument is the same analysis applies as the background of fraud on the copyright to this question of knowledge versus intent. Tricky question perhaps, but okay. I'm just trying to understand how you get to the result here. I'm trying to understand what Unicolor's actually says. And what the court said, and that was admittedly dicta because what the case was decided on was a question of a mistake of law as opposed to a mistake of fact. And the court held that both could be the basis for inaccuracies that didn't invalidate the copyright registration. And so when the 9th Circuit picked it up on remand, I think they said something like there's no, in their view, there's no daylight between mistake of law or fact and intent to deceive in that sense. I'm not quoting that perfectly, but paraphrasing. And so what they said then is, well, we're going to go ahead and agree with what the 11th Circuit had held previously and adopt a standard. And they published it. And you're absolutely correct, Judge Kogos, that that's not the Supreme Court speaking. But when the Supreme Court took the case, there was a split among the circuits. Well, and they were going to answer this question, weren't they? Right. And they took it because there was a split, and then it somehow shifted. And I know you probably noted Justice Thomas took issue with that, I think correctly, that they shouldn't be. But anyway, that's what happened. But now I would say there is no longer a split among the circuits because the 9th Circuit has got on board with the same view that the 11th Circuit had set. Does that answer your question? But it answered my question. I have other questions. No, go ahead and finish. I think I'm done. Okay. I thought the most important part of unicolors was when they talk about knowledge. And they say knowledge means just what we all think knowledge is. And they say it, too, plain old knowledge like everybody talks about. And didn't here your client have knowledge of what was going on? And doesn't that part of unicolors decide the case against you? Well, I would say no. And the reason I would say no, Your Honor, is, you know, it's knowledge of, well, unicolors helps my client in that if my client knew or should have known that what was included in the copyright deposit included material that shouldn't have been there, but didn't know what the implications of that were legally, unicolors would support the position. But the fact is, you know, what you do when you collect a deposit of computer source code, you collect some files. And unfortunately, my client picked up the wrong file. And software is often a combination of files. There's this and there's this and this. And in this situation, what was picked up was the first five pages, which happened to be key to the case because that's what's being infringed, then some material that shouldn't have been there, and then some more material that should have been there. And it was, you know, to say that, you know, is it subjective knowledge that what you were picking up was something that was wrong and shouldn't have been sent in? That's what concerns me. I mean, the summary judgment was granted on the basis that there was no reasonable issue, no material issue of fact with respect to your client's knowledge. And what I need to know is what is the evidence that led to that the source code had misdated portions? That's really not the case for me. What is that evidence? And related to that, the person I'll call the redactor, who apparently was the same employee, I'm not sure, in both instances, who compiled the material. His deposition, there's nothing in the record about his view of this. There's no deposition, is there? No. Do we know who that person was? I mean, is it in the record who that person was? I think the name was included within one of the declarations that Mr. Huber filed. I wonder why there was no discovery on that question. It seems to me it's pretty central. I agree with that, Your Honor. And I think that's one of the issues. Your discovery got put aside. There was some written discovery, and then COVID showed up.  So by agreement, the parties didn't do any depositions. This motion took over the case. So there's never been a complete record on what exactly happened there. So the district court just decided on the basis of inference, despite Mr. Huber's protestation to the contrary, that there was knowledge. Correct. Yeah, and as I think about it, the district court, in essence, applied a negligence or should have known sort of standard. And I think Judge Benton, what you asked about the Supreme Court talking about knowledge, I think they're pretty clear that they're talking about subjective knowledge, not some know or should have known sort of standard. Actual knowledge. Actual knowledge, yes. Well, that was one of Justice Thomas' complaints in the dissent, I think, that the issue is more complicated because constructive or actual knowledge are relevant in this analysis. Is that a fair reading? I think that's correct, yeah. What about the court statement, though, I'm quoting, willful blindness may support a finding of actual knowledge. What about that one? Well— That's a quote from Municommerce. Well, I think that can be—I don't disagree with that. But there is no evidence of any such willful blindness here. So it's partly— Well, when these papers are filed two or three times, when do we start thinking about willful blindness? I think that you're—I think if you would look at it and try to think about is there any subjective basis, any rationale, any reason for the applicant to have done that for purposes of getting some edge on the copyright office, when the only evidence, the actual evidence in the case is that this was just a whoops, a bad one. That's why I'm standing here today. This was not a—this was a bad mistake. But it occurs over such a period of time, though. That's, you know, starting in 2001, 2004, 2014. You know, it's such a long period of time. Well, the software was created in 2000 and the registration happened several years later. That's correct. But—and that's maybe part of the problem. Had the registration occurred right after it was created, there wouldn't have been multiple files to be there and cause the applicant to pick up the wrong one by mistake. But it was—the only evidence of the case is that it was a subjective mistake, and that's all. And so I see I'm into my rebuttal time. And you may reserve it whenever you desire. Thank you, Judge. Thank you very much. Mr. Corsagli. Good morning, Your Honor. May it please the Court and the Counsel. My name is Peter Corsagli. I'm here to represent and represent the respondents. I want to get you to the pointed questions that we've been dealing with today. First, let's talk about the structure of the statute. Intent is not required. Basic statutory interpretation, we start with the four corners of the statute. That's what the Supreme Court guides us on. That's what we look at first. Is the statute ambiguous? It's not. It's never been argued that it is ambiguous. So we don't have to go into the background of the statute. We look at the four corners, and that's what the Supreme Court did at Unicolor. They looked at what does knowledge mean. They came to the conclusion it's what we always know it meant. Knowledge is knowledge. So you have to look at the statute as written, and that's what Congress wrote. That's what the President signed. Congress knows how to write intent. We could look at, and I was looking up some statutes, 18 U.S.C. 1002. That's possession of false papers to defraud the U.S. That statute reads, whoever knowingly and with the intent to defraud the United States or any agency thereof possesses any false, altered, forged, or counterfeited writing or document for the purpose of enabling another to obtain from the United States or from any agency, officer, or agent thereof any sum of money shall be fined under this title or imprisoned not more than five years or both. Congress knows how to write intent to defraud. We go further into those sections, 1005. Your time is short. So address what I want to know, which is we have Huber's declaration. And, of course, he says, I don't personally know. But what is the real record on a person who coded this, uncoded it, knew enough to hide the trade secrets and everything going on here? And that's what we tried to show to the district court, and I thought we did. So what happened here, we went to the Copyright Office. We got certified copies of what was submitted to the Copyright Office. What we found out was there was a source code submitted that had a 2004 tag on it. It said it was copyrighted in 2004. It corresponds from the Copyright Office back to LADS. It said, hey, you cannot copyright this as of a May of 2000 date. You have a 2004 sticker on it. You could either do two things, disclaim everything that occurred prior to 2004, and we'll give you the copyright over the new material, or resubmit the 2000 version. Also, you could submit the first 25 pages and the last 25 pages and then redact all the trade secrets. Upon receipt, I believe in September of 2014, they resubmitted what we showed, I believe on the record, was the exact same copyright code, except for they submitted the first 25 pages and the last 25 pages, whereas they originally submitted the entire code, and then they redacted portions of the code. The portions that they redacted are vital here. That's how we know that this is a knowing component, that they knowingly submitted inaccurate information. The portions they redacted included references to Yahoo, a Yahoo program that didn't exist in 2004, mind you. It existed afterwards. So they resubmitted, and we showed this through the actual documents that were submitted to the Copyright Office, that they submitted a post-even 2004 version as if it was 2000. I think we called it in our summary judgment papers, they put a new born on date and resubmitted it. Do we have deposition testimony? No. But we have all the material evidence that shows what they submitted, and someone who had to, and this was an oral argument, someone who had to go in and read enough knowledge to redact portions of the code. That is where I believe Judge Pitlick rightly looked at and said, if you have knowledge to know what to redact, you have knowledge to know what you're submitting. Why couldn't the jury conclude it was just a matter of lack of intention or lack of familiarity with some or all of the third-party code, that it was inadvertent? I believe the jury would never get to that point. First, I don't think Mr. Huber's affidavit ever got to that point, to contradict what we submitted to the court. It was silent as to that issue. I believe the judge had the evidence in front of her, including additional statements of fact where we laid all this out, that were never responded to. So we have these statement of facts that to me are deemed admitted. It must have been argued, though, right, that this wasn't sufficient to establish knowledge, that it must have been argued that it wasn't sufficient. Mr. Huber argued in his affidavit that I, Mr. Huber, did not know. I'm sorry? He said, I, Mr. Huber, did not know. There was no affidavit submitted by the person who actually compiled this code. That was silent. I thought the district court's observation that the affidavit was self-serving was not particularly persuasive, because of course it was. I mean, it's not supposed to be. I mean, it was self-serving in the sense that it was his version of the facts that would help him. I don't understand why that counts against him. But you've gone. I mean, it is true. I mean, it seems to me you've put your finger on my difficulty, and the real difficulty is what are the other inference? What evidence will support an inference that wasn't there an inference here that's supportable, that what happened here was inadvertent? I mean, I admit there's a certain amount of suspicion here. There's smoke, but is this not a jury question? I don't believe it's a jury question, because if you look at the affidavit itself and then look at the evidence that was put forward before the court of source code, multiple source codes, evidence that someone went in and redacted, that's the evidence that was never countered by the plaintiff in this action. What's the inference you're referring to there? The redactions occurred. And remind me, the district court found that the only reasonable reason for those redactions would relate to? I mean, help me out with that inference. So the Copyright Office allows you to redact portions of a source code that you believe are trade secrets. So someone who went in to the source code had to have enough knowledge, and I believe this was admitted by counsel during argument, had to have enough knowledge to know what was source code, what was trade secret, and then redact those portions. Within those redactions, if we would unredact everything, that's where you see references to computer software that did not exist in 2000, it did not exist in 2004, it existed years later. So all of that evidence was redacted? All of that evidence was redacted and then submitted to the Copyright Office as if it was created in 2000. There is no dispute, I believe, regarding that. And this was something that we brought up to counsel well before we filed the summary judgment. We outlined, it wasn't just Yahoo, there was a Google Maps program that I know didn't exist until, I believe, 2011. There was Apache programs. There were other items within this source code that didn't exist as of 2000. And we brought that to their attention. Yes, again, there were no depositions. It was COVID. We were also going up against a deadline, a discovery cutoff deadline. This motion or this summary judgment was heard afterwards. So to me, the inference, I don't know if there is an inference because the self-certainty affidavit again, it didn't counter the record. It didn't counter all the evidence that was put before the court. It was, hey, my bad. Well, that's not good enough saying my bad. This would allow the Brunetech case that we relied on. In that case, it was a lawyer who submitted the software code. The lawyer obtained the software code from its client. The software code admittedly contained, I forget what years, but I'm just going to make this up. Say they wanted a 2005 publication. It was actually published in 2007. So it had a wrong publication date. But the attorney took it, submitted it to the Copyright Office, and said, okay, here's the copyright. The Brunetech court said, no, that's still someone at that company had knowledge of the inaccuracy. The company still gave it to the attorney so the attorney could submit it. This is something that Judge Pitlick, I think, was very wary of, of having one person look it over and another person submitting it and then saying, my bad. This is not a my bad case. This is someone who all the evidence, I believe, shows this, had enough knowledge, and there's omissions to this, had enough knowledge to know what they were redacting and what they weren't. Gave it in, and then they'll submit it. That is enough under this statute, the way it's written, to invalidate this copyright. There are two other arguments that Mr. Ravenberg brought up, and I could address those briefly if you'd like. I believe we just talked about one of them was the factual record. But I guess the last argument is a reconsideration. Simply because I wholly dispute what they did was proper of getting a new registration. I wholly dispute this. And this is after the court's judgment? This is after the court's judgment. After the district court's judgment. Yes. And I wholly dispute whether that corrects anything. I believe the Copyright Office, I think if we would litigate that issue further, we would find out that that's an improper mechanism of trying to fix a deposit copy. But assuming you could do that, it occurred after judgment, that's not a newly discovered fact. That's a fact that never existed. That does not fall within the Rule 59 or 60 of reconsideration. That is just outside of it. That's the Alicia court I cited in my brief. They had the same sort of issue of a registration after judgment, after court dismissed. There is no prejudice here because it was also, again, dismissed without prejudice. If you could refile, you could try this again. No one's saying that the district court dismissed this with prejudice. Do you agree that if we affirm that we create a circuit split here? Yes. I think there's no way around it. And that would be with the 11th and now the 9th? Correct.  The 9th Circuit's the only one since Unicolors who's actually, from a court of appeals perspective, looked at this issue. They're the only one. The 11th Circuit came out before that. I believe the 9th Circuit got it correct in the beginning, obviously. But you look at some of the other district courts out there, including Iowa, Tennessee, I cited them in my brief. They all came to the same conclusion that we have, that fraud is not a requirement under this statute. I believe there's a federal court of claims case, that healthy state case that I cited. I believe that's going up a chain as well. So this is a relatively new area that everyone, there's not, I think Judge Pillicks nailed it on it, that this isn't a well-developed area right now. I believe the Supreme Court wanted to take care of this. They had their chance, and then it was taken away from them. But I do believe, yes, there's no way around it. This would create a circuit split. Well, on the motion for reconsideration point, I understand your position on Alicia. But isn't it also true that the act itself says that there has to be a valid application before you can bring an action, institute an action?  So that's another independent reason for rejecting that. Is it not? For rejecting, yes. I would think that the new, if you look at the amended complaint, that they wanted to start over. They would have to start over and file it. They would have to add those two registrations together and start over. And then we're back to square one. If you have no further questions, thank you, Your Honor. Thank you for the argument. Mr. Ravenberg. Thank you. Indeed, I guess we all agree that there would be a circuit split again if you adopt a standard different from what the 11th Circuit and 9th Circuit did. Their standards read just a little bit different, but in essence they're the same thing. The component of intent or fraud or purposeful concealment or something like that is inherent in theirs. And I think it is consistent with what the Supreme Court said, although the Supreme Court didn't hold that directly. I think, Judge Arnold, I think you raised the issue of, you know, what was the evidence of whether this was inadvertent or on purpose. The only real evidence, honest to God, is the Huber affidavit, and he explained what happened to the best of his recollection after many years, and it was a mistake. And as we've said many times, there haven't been depositions. It's not been fleshed out. It seems like it comes down to a question of whether there is actual subjective knowledge that this was wrong. I think that's a question of fact that the jury has to have a chance to look at. I think the judge drew implications that I don't believe are fair. The judge actually even said at one point in time, because there was an attorney fee award at one time, and she basically admonished Mr. Huber for not being as careful as he should be. Well, carefulness is negligence, and that's clearly not the standard. You know, it has to be actual knowledge, actual subjective knowledge. Is that well established, that it has to be actual subjective knowledge or constructive knowledge? Well, I think what the Supreme Court said is that actual, I think it does. I think what the Supreme Court says is a mistake as to the law or the facts is not enough to invalidate the copyright unless you did it on purpose. And so I believe it does, but is it a little bit unclear? I think it is a little unclear. And then what I want to conclude with is that, as I said at the outset, and nobody disagrees with this, copyright applications are supposed to be easy to do. The fee is very low. You send in a simple form. You send in a deposit and a small fee, and it's supposed to be easy. And communicate with the copyright office, and it happens in a relatively short period of time normally, right? Yeah. Not over all these years. Right. And, you know, I'm not a patent lawyer, but I did a lot of patent litigation. Patents are a very, very different thing. You've got to go find a lawyer, and you've got to work hard at it. Copyright is supposed to be easy, and you're not supposed to have to go hire a lawyer for that. And, as the copyright office said, and as the Supreme Court said, this is not supposed to be a trap for the unwary. It's supposed to be easy, and this was supposed to create a safe harbor. 411B was supposed to be a safe harbor to prevent gotchas from making a mistake. You know, having something happen 20 years ago, or 15, I'm making this up, and you can't remember exactly what happened, and you never had any intent to trick the copyright office. So, if there are any other questions, I see my time's out. Thank you for the good discussion this morning. Thank you for the argument, both sides. Case number 23-3267 is submitted for decision by the court.